is now in session. Please be seated. Welcome to the Ninth Circuit. We're glad to see everybody here this morning. We have four arguments set to be argued today. We'd just like to remind Council to try and stick to your time frames, especially where we've got a little bit of a busier morning. We'll try and sum up as your time is running down. Let us know if you want rebuttal time, but watch that as well. We'll go ahead and mention, I guess we just got one submitted case today, United States v. Renteria, case number 23-1869. We'll go ahead and start with the first case set for argument, which is Cervantes-Torres v. United States, case number 23-55617. Good morning, Your Honors. May it please the Court. My name is Katherine Kimball Windsor, and I represent the appellant, Hector Cervantes-Torres. I'd like to reserve three minutes for rebuttal. We are here on the appeal of a quorum nobis petition, which raised a rehafe claim challenging Mr. Cervantes' conviction for 922-G5A, which prohibits firearm possession by a person unlawfully in the United States. In 2019, the Supreme Court held in rehafe that the government must prove knowledge of the relevant status in a 922-G prosecution. And after rehafe, it's clear that the jury here in this case at the level was misinstructed, although it wasn't misinstruction at the time, of course. But because this instruction went to the heart of Mr. Cervantes' defense, it is fundamental error under the quorum nobis requirement. And so which requirements are you relying on? You're relying on our prior case law with the four standards? Correct. And there's really only one that's in dispute here. It's the fourth one about whether this was fundamental error of the most fundamental character. And so there was no objection to the instruction at trial or request for a different instruction, was there? There was not. It was really clear that Mr. Cervantes, and the government acknowledges this, that Mr. Cervantes, the defense he wanted to go with, and the reason that he went to trial was that he believed that he had legally entered the country. It wasn't a defense at the time, and his lawyers told him that it wasn't a defense at the time, and he went to trial against their advice. He testified, and he really admitted all of the elements of the crime as it was then defined. And he would occasionally try to ask if he could give additional explanation, but it was a very truncated direct exam by the lawyer who was trying to make sure they didn't tread into... Right, but he's not asserting an ineffective assistance of counsel claim here, right? I mean, so... Not on... Just a challenge to the instructions. And so, you know, the government has this argument about cause and prejudice, but even if we don't agree with that, isn't it at least plain error review that we have to apply? Yes, and I think, I mean, I argued that we've established actual innocence, but I think we definitely certainly can meet either of those other two standards, which are... Can I ask you about actual innocence, though? Because, I mean, I understand that there are some sympathetic facts here, but at the end of the day, he got a letter from USCIS that says, you're not here legally. How do we look at that, you know, under the plain error standard or any other standard and say, oh, well, there's absolutely no way he could have thought that? I mean, his response is, well, I just thought it was an error. Yeah. Did he say that at the time or that only came up later? He... Actually, when he's testifying, when he was asked about it, he asked if he could explain the answer, and he was... He was not allowed. He was not allowed to explain that. So he didn't give the... He didn't... At the trial, he didn't say, oh, I got this letter, but I just thought it was wrong because of this and this and this reason. I think that the letter said that he could provide additional information, and what you see throughout the whole case was that Mr. Cervantes really believed in the power of his green card. If he had his green card, he felt like... He was told that the green card... Am I wrong? I thought he was told that the green card wasn't effective anymore after 2013. Well, he was told that his application for the replacement card had been denied, and I, you know, Your Honor, if you want to... I can understand you not finding for me on actual innocence, but let's, you know... So, but even if it's not actual innocence, I guess back to Judge Miller's point, you know, whatever standard we apply here... Yeah. Well, the other standards are... How do you win under that? The other standards are, I mean, plain error is reasonable probability, which Judge Baker in the Mitchell case came up with it that he thinks that's about 25%, but in any event, it's less than more likely than not. It's more than reasonable possibility, which is 10%. It's not... I mean, I'm not saying that it's nothing, but it's not the most stringent standard that I can imagine. I'm not here arguing for judgment of acquittal. I'm not saying that, you know, that the case should be dismissed outright. This is... We're making an instructional error claim, and what we're saying is that this was really the heart of his defense, and because the jury was misinstructed, and he wasn't allowed to present that defense. Well, but he... Isn't that part of the problem? He didn't present that defense. Well, he couldn't at the time because... But why does that matter? I mean, at least in the habeas context, we see it all the time where criminal defendants are raising arguments that are but they feel that, you know, they're preserving their argument, or they feel the circuit precedent was wrong. I'm worried about setting a standard for defendants where they just say, oh, well, there was circuit precedent. I didn't have to raise it, and then we're stuck having this very issue here. I mean, you've probably read my... This might not surprise you because you've read my concurrence in Pollard where I've expressed this view, and it may not be, you know, the consensus view, but I'm wondering how we get around this problem. Well, I think it's... I think I'm... I am aware of your concurrence in that case, and I think what happened, though, was that then in a subsequent case, in the Worley case, this court found that the cause element was met, and I don't think the government disputes that either. I understand, and I'm only saying it because you said, well, he didn't... He couldn't even present it, and I guess I'm just pushing back on that. Yeah. Because I think he could have. I mean, they do what... Defendants do it all the time. I mean, certainly the Rahif defendant raised it, which was the argument that the Third Circuit adopted. This court did not adopt that position. I certainly see your point, but I think that particular issue is closed at this point based on the Worley decision, and I think... No, I don't disagree with you. Yeah. I'm just wondering where that... Yeah. ...enters into our... I mean, it is tough as a defense lawyer to have to... To raise these five other arguments that were precluded that might raise some other... They might get some viability. Exactly, and we... I mean, I think we are more conscious of that right now as the law is changing so much. That was sort of another side note that I wanted to mention, was that while this case was pending, the Bruin case came down, and that certainly has... There's a whole other... There's a whole other issue here, and so I... Why hasn't that issue been teed up? Well, it had been... We had already argued it, and I don't know if this was the right thing to do. I'm not sure if you can file subsequent quorum nobis petitions, but I would ask that if you don't... If you disagree with me on the Rafe issue, that if you remand to the court to allow me to amend the petition to add that claim... We get a fun Second Amendment case coming up, too. Yeah. I mean, I think that is really certainly where the hot litigation is happening on these charges. I feel like I'm here arguing the wrong issue in a way, although I do think that we win on this issue, and I do think that this is not... Whether it's plain air, whether it's actual prejudice, which I think are about the same thing, reasonable probability or substantial likelihood, I think we should win under either standard. Before you sit down, can I just ask you one question about the green card? So I understand that part of his theory is... Well, they gave me this sticker extending the green card. Am I correct that the sticker extended the validity of the green card till April of 2013? Yes. And the arrest here was in October of 2013? That's correct. Yes. Thank you. Thank you. Good morning. Rob Keenan for the United States, and may it please the court. Coram nobis is an extraordinary remedy designed only for extreme cases where justice demands that some relief be provided. That's not this case. The error of a most fundamental character, and more to the point, the defendant in this case... Can I ask you about that, just so I have it clear in my head? I mean, as I understand it, this is an error of the fundamental character in the sense that a Rahif problem fits that definition, but we've still got to deal with the overlay of whether it meets the plain error standard or whatever standard we choose to apply. It is no question that an instructional error occurred in light of what we now know under Rahif. At the time, your instructions were entirely correct. No legal error there. But since then, the intervening decision in Rahif makes clear the mens rea requirement includes the prohibited status, knowledge of it. So as to that, we think there's no proof of a fundamental character. And more to the point, under the Frady standard, we believe that the defendant has failed to establish a substantial likelihood that if this case were tried before a jury properly and instructed under Rahif, that the result would have been different. What is your view on that standard that we should be applying for that? I think in Pollard, that was a habeas case, 2255, where the court applied a cause prejudice standard. I think there's precedent for it in that sense. Have the other circuits gone that way? The DiCastro case, 3rd Circuit, I believe, cited in your brief, is consistent with that. Are there any other circuits that have gone the other way and have rejected a cause and prejudice standard in the Coram Novus context? Not to my knowledge. And you're not questioning the cause part of cause and prejudice, are you? No. I'm sorry. So if it's just prejudice, is there really any difference between the prejudice part of cause and prejudice and what you'd need to show or what he'd need to show on prong three of plain error? According to Frady, the Supreme Court makes clear plain error is too deferential on a standard of review, on a collateral review. We need to respect the finality of judgments. That's what the Supreme Court has taught us in many, many cases. And, you know, 10 years after the judgment in this case, we're way down the road. And in terms of what Frady says, it makes clear that the substantial likelihood standard is higher than, more rigorous in terms of a burden of proof than the plain error standard. So I think there is a difference. What's substantial likelihood mean? It's not 25 percent or 51 percent. I'd peg it more like 80 to 85 percent. That's a substantial likelihood of success in the event of any retrial. Why doesn't the four-part test that we have adopted for the Quorum Novus petition satisfy the concerns that were raised in Frady? Because in my view, they do. Well, in answer to your question, I think Frady provides the definition, the actual, not the standard, for what a fundamental error is. I think they're to be read together. I think the fourth element in the Kroitor case, if I'm pronouncing that correctly, is how do you hash that out? What's that mean? What does he have to prove? And Frady provides the standard for the defendant's burden of proof. So would you agree with me that the second prong of the Quorum Novus test requiring valid reasons for the delay is the equivalent of the cause requirement in Frady? Would you agree with me? I do. Okay. And would you agree with me that the fourth prong of the Quorum Novus test, which is the fundamental error, is the equivalent of the prejudice requirement under Frady? Under Frady, yes. But not under the... Well, let me strike that or buy that back. You said the word equivalent. That's a word doing a lot of heavy lifting in that question. I disagree with the notion that they are equivalent. As I was mentioning earlier, I think the substantial likelihood test under Frady, the actual cause standard, the cause and actual prejudice standard is far higher than the plain error standard. So I completely disagree with the notion that the fourth element of plain error review is equivalent to the most fundamental character, error of the most fundamental character, as hashed out in Frady's cause and actual prejudice standard. So in terms of just the facts, I think it's best to sort of... At the time of the offense in October of 2013, what did the defendant know about his legal status? And the court made clear, the district court made clear, and I think this is an important part of this case. One standard of review we haven't talked about is that applicable to the district court's findings. They should only be reversed if they are illogical, implausible, or totally unsupported by the record. The defendant doesn't come close to establishing that burden of establishing plain error as to the court's findings. Is the case just based on that? Yes, I think that's the... Because we've got some thorny issues here that might be difficult to wade through. Could we just view this case at heart as a clear error by the district court, a review? That there was no clear error, that that's the standard, that that's really ought to be the key focus? That is my view. And if the focus is on the factual findings made by the district court under plain error, or the Frady standard, I'll make it simple, the result is the same. The judgment should be affirmed. In what sense was the district court making factual findings? Wasn't it just reviewing the record of the trial? I mean, it's basically not a direct appeal, but basically an appellate function of reviewing this, right? So why is that reviewed deferentially by us? Because the district judge in this case was the trial judge. He sat through the testimony long ago, but we did provide him with... He had available the transcript of the trial. We made heavy reliance on it at the hearing in our opposition to the quorum novus petition and at the hearing on that petition. So that's why we believe... And there are findings... If this had been a quorum novus from a state proceeding, and it was a federal district court reviewing that, we would not be able to provide clear error under that theory, because under your argument, he wouldn't have been making factual findings because he didn't sit through the trial. I don't know the answer as to state cases. I know there are different rules applicable to habeas cases. I'm just saying the federal... I mean, I guess there's a separate point whether the state court made any factual findings, but the district court, under your theory, in my hypothetical, would not have been making any factual findings. You're saying he was making factual findings here because he sat through the trial in the first instance. If we had had an evidentiary hearing on the quorum novus petition, the hearing that the judge held on that, that would be different. However, I didn't feel the need to further develop the record because we relied so heavily on the record of trial. The defendant testified, there was full cross-examination. But maybe to Judge Miller's point, maybe we can't do clear... I mean, at the end of the day, what factual findings can he make? Because the inquiry here is not... The inquiry isn't whether there's actual factual findings, but to what level they satisfy under the quorum, whatever standard we apply under quorum novus. In applying the de novo review, the court does nonetheless make clear in its precedent that it's deferential to the findings of the district court under a clear error standard. Let me just point out a couple of things. At the time he possessed the firearms, he had received a year before the letter from CIS saying you were previously deported, you have no legal status here in the country, and your green card is invalid, and basically you shouldn't be here at all. And your green card is invalid. He knew that. We have testimony on this. The court can find it, page 669 to 670 in the excerpts of record, volume three. On cross-examination, he admitted that at the time, in October 2012, he received the letter, read it, understood it. So it wasn't unclear to him. Plus, he already had a lawyer by that time, that he previously... Well, he had a lawyer back in 2000 and 2001 when he was first pursuing an effort to vacate the deportation order. But then, as Judge Miller noted, the extension sticker on the back of the green card that he received during the penancy of his application to get a renewed green card, it states clearly it expires in the month and year indicated, and it's indicated April 2013. That's six months before he was found in possession of the five firearms in this case. So by that time, it was crystal clear. He got a letter from CIS, and his extension sticker had expired. He has no basis in the record for believing that his green card gave him any lawful residency status. And that's especially true given that A, he was present at the deportation hearing. Contrary to the suggestion, he was bewildered by the proceedings. He had an interpreter throughout the proceeding, and he hired a lawyer in 2000 to challenge the deportation order. He got deported in 2003, came back, and we cite two cases, Second Circuit and Seventh Circuit case that make clear... You know, it's a pretty clear indication that you're not welcome in the country when you're physically removed by border officers. And that his claim that, oh, he, you know, waved through as he walked through the border literally a day or two later with his green card, that he was under the impression that that validated his status. We've got case law that has rejected that as a basis, right? Don't we have case law that said just because they don't take action when you show your card doesn't, is not a reasonable basis? I believe we had, I believe we cited two cases, three cases, one of which I think included a Ninth Circuit case. Oh, I think I'm out of time. Yeah, you're on the red. So thank you, counsel, for your arguments. Thank you very much. Yeah. I would agree with counsel that it is important to look at that testimony at 4 ER 669 through 670, because you can tell that Mr. Cervantes is trying to explain something further when he's asked about the letter that he received. And I think that's the problem with the district court relying on the trial testimony exclusively and not looking at the entire record, is that at the trial, this wasn't a defense. He wasn't allowed to explain, mens rea was irrelevant. The significance of this point, not just with respect to the testimony, but also in the closing argument, the sort of, you know, significant lengths that the government took to try to cover up this notion that Mr. Cervantes was trying to explain that he did, in fact, believe that he had a legitimate reason to think that his green card was effective. As I read it, it wasn't just that there was an instruction that was missing, but that the prosecutor reminded the jury that his confusion about his status has no relevance whatsoever. So what's the significance of that? Well, that is exactly the problem, because that was what Mr. That's really, this is a major due process issue, that his defense in this case, and this is really unusual, when we look at all of the other cases, I would bet this is the only time this has ever happened, that somebody actually had this defense that turned out to be correct. He did not, he firmly believed he was innocent because he had permission, he had legally entered the country. That was not true under the law. Because he'd legally entered the country when? When he presented his green card. But that's not enough to say that you believe that you've legally entered the country. Well, he has always maintained that. I understand that, but I don't think that we can find a holding that somebody who walks through border security and shows a card that he, I mean, you could have all kinds of fraudulent cards. Well, absolutely. But you're just saying. I'm saying that's what he believed. He was absolutely wrong about that. Factual issue that I'm confused about. Yeah. So I see in the record that there was an issue about his release on bond, that in fact, initially his bond was set at a very high amount. Then there was an actual order from the court denying him release on bond. And then two weeks later, he was, and I know that your client is arguing that this progression and ultimately his release on bond for $3,000 further supported his belief that the error had been corrected. This confusion that he thought was pervasive in his case had sort of been rectified and therefore he was allowed. But what actually happened? So I understand his argument. But was there an error that allowed his release on bond after he'd been ordered to not be released on bond? It was, his deportation occurred at a very odd time in immigration law. It was in 1996, IRIRA and ADEPA had just come down and courts didn't really know what to do about it. And so he was advised at the time that he was not eligible for bond. And then later on, it was determined, I'm not sure that, it was before the, he was also told he didn't have, he wasn't eligible for 212C relief, which the Supreme Court in St. Cyr later held that he was eligible for St. Cyr, but his appeal had already been denied at that point. It was just a very strange time in immigration. So these changes that were occurring would support his view that maybe in fact there had been a change or somebody had sort of alerted the officials to his status thereby allowing him to now be released when he had previously been denied eligibility. Yes, and that is, I mean, that is what he believed. And as, you know, to your point, it wasn't correct what he believed, but when we're looking at this test, we're looking at the defendant's subjective belief. And so- And that's an element of the- That's now an element. That the prosecutor needs to prove. That's right, but here we're looking at whether, there has to be an overlay of something to say whether that belief was reasonable or, because, I mean, if you were on direct, I mean, if you were arguing this today, yes, you'd have that defense, but now we're looking at quorum nobis, we have to be asking whether that belief was reasonable in some sense. Well, I think, I mean, I would just say that the government just said that it's an 80% standard and that's, it's definitely, it's below 50%. I'm just saying, look, you know, let's let him go to trial and present this defense and he might lose, you know? I think- The issue that Judge Nelson is talking about, which is whether or not his belief was reasonable, that's for a jury to decide, correct? But not once a finality has been decided, that's for us to decide whether he's, we have to take that into account in some degree in order to grant him quorum nobis relief. Well, the issue is whether this was a fundamental error and in most cases- And that has an overlay of whether there was some sort of reason, I don't know what, we're gonna have to have a debate about what that standard is, but whether it was reasonable, whether it was 20%, whether it was 50%, whether it was 80%, we can't just say, oh, he believed that, you get relief. No, I'm asking for a remand. The remedy that we're asking for is remand for retrial or remand- No, but even to get that relief, we don't, you can't just come in and say, he subjectively had this belief, therefore he gets quorum nobis relief. We have to apply some overlay to that on this review, right? Well, I mean, I would- That if we said he has a 2% chance of winning, that's not enough to get quorum nobis relief, right? That's correct. I do have to meet that standard, for sure. He can't just come in and say, the record shows we have to apply some sort of overlay standard. And typically in these cases, there's absolutely no evidence. I mean, when you look at all of these, this is the rare case where there is evidence. I understand. Okay, thank you. We've taken you over, but we appreciate both counsel for your arguments. And the case is now submitted.
judges: NELSON, MILLER, DESAI